Zimmerman, J.
 

 For a proper understanding of this case it Becomes necessary to summarize the material evidence as contained in the bill of exceptions.
 

 Wilma Black, unmarried, had held a stenographic position with the Union Central Life Insurance Company of Cincinnati. Beginning sometime in 1936, she became afflicted with a crippling form of paralysis. In 1939 she went as a patient to the Beading Institute and was there attended by Mrs. Ann Tegeder, a graduate nurse. In 1940 Mrs. Tegeder came, as a nurse, to the Black home in Cincinnati, occupied by Miss Black and her parents.
 

 During the latter part of that year, Mrs. Tegeder went to Florida and took Miss Black with her. They were later joined by Miss Black’s father and mother, who were also invalids. Mr. Black died in Florida in October of 1941. Miss Black remained continuously with Mrs. Tegeder in Florida until the middle of 1942. Shortly after Mrs. Tegeder and Miss Black arrived in Florida, a large house was leased, which was fitted out as a nursing establishment and operated by Mrs. Tegeder, under the name of the “Miami Beach Convalescent Home.” Besides Miss Black and her parents, a number of other patients were accommodated.
 

 At first an arrangement was contemplated whereby, for the lodging, food and general nursing of the Blacks at the convalescent home, Miss Black was to pay Mrs. Tegeder the sum of $50 weekly for each of them. The cost of special nurses, doctors’ services, medicine, drugs and other extraordinary expenses was to be extra. However, such arrangement was never consummated, and an agreement or' understanding was entered into between Mrs. Tegeder and Miss Black whereby, in consideration of Miss Black’s advancing
 
 *408
 
 the funds required to lease the convalescent home, Mrs. Tegeder was to care for the Blacks at $50 per week each plus additional charges for special needs, and credit the same against the advance.
 

 At about the time she went to Florida, Miss Black had a considerable amount of money in several Cincinnati financial institutions, approximately $12,000. A check from one of these institutions for $3,500, dated December 11, 1940, and payable to Wilma Black, was sent her in Florida. It was endorsed by Wilma Black and Grace Ott, the latter being one of the owners of the property leased, and deposited in a Miami bank. Another check from the same institution, dated July 16, 1941, for $2,356.94, and payable to Wilma Black, was also sent her in Florida. It was endorsed by Miss Black and Mrs. Tegeder and deposited in the same Florida bank. Mrs. Tegeder testified that the proceeds from both these checks were-applied in payment for the lease of the property.
 

 There were other checks in varying amounts sent to Miss Black from time to time from the Cincinnati institutions where she had her money. They were endorsed by Miss Black and Mrs. Tegeder and the latter collected the proceeds. Mrs. Tegeder and Miss Black both testified that, pursuant to their arrangement, Mrs. Tegeder credited against the amounts she so received the care of the Blacks at $50 per week per person, together with other expenses incurred by them or on their behalf. The aggregate amount of the checks issued and so handled totalled $10,428.09.
 

 At the hearing in the Probate Court, Mrs. Tegeder was unable to render any written account of these transactions, claiming that they were contained in a book she- had left at the convalescent home in Florida upon her departure. Miss Black, whose mind seemed unimpaired, appeared and testified as to the arrangements described. She had prepared a memorandum covering
 
 *409
 
 the matters involved and this was introduced in evidence as an exhibit. Miss Black insisted that she was then indebted to Mrs. Tegeder for care and nursing in the sum of approximately $1,000.
 

 From all the evidence it is impossible to strike an accurate balance between the amounts turned over by Miss Black to Mrs. Tegeder and the amounts to which Mrs. Tegeder might be entitled by reason of services performed and expenses incurred in connection with care of the Blacks.
 

 Two other matters should probably be mentioned. One of them concerns an automobile, originally owned by Miss Black and Mrs. Tegeder jointly, Miss Black having transferred her interest therein to Mrs. Tegeder after the appointment of the guardian. The other has to do with the Black residence property in Cincinnati, which Miss Black conveyed to Mrs. Tegeder in December of 1942 in consideration of her continuing care, but which was reconveyed by Mrs. Tegeder to the guardian before the hearing.
 

 Upon her return to Cincinnati from Florida in 1942,' Miss Black went to the residence of one of Mrs. Tegeder ’s daughters and was finally placed in the county home where she was an inmate at the time of the hearing.
 

 In arriving at his findings, the judge of the Probate Court charged against Mrs. Tegeder the $3,500 check endorsed by Miss Black and Mrs. Ott, several other checks endorsed by Miss Black and Mrs. Tegeder, amounting in all to $6,928.09, and the half interest in the automobile, valued at $520.47 — a grand total of $10,948.56. Against this he credited the sum of $8,950, representing the nursing and care of Miss Black for 89 weeks at $50 per week, the nursing and care of Mrs. Black for 46 weeks at $50 per week and the nursing and care of Mr. Black for 44 weeks at $50 per week. Upon such computation he stated in his opinion, which was rendered orally:
 

 
 *410
 
 ¡ í # * * j find that there is in the possession of Mrs. Tegeder, which she has received and which she has to this day refused to deliver to the guardian, the sum of $1,998.56, for which amount judgment will be awarded. ’ ’
 

 The controlling question for decision is whether the situation as outlined presents a matter properly cognizable under the provisions of Section 10506-67
 
 et seq.,
 
 General Code.
 

 Section 10506-67, General Code, states in substance that upon complaint to the Probate Court or Common Pleas Court by an interested person against a fiduciary or other person suspected of having concealed, embezzled or conveyed away, or of being, or having been, in the possession of any moneys, things in action or effects belonging to a trust estate, such court shall cite the person so suspected forthwith to appear before it and be examined on oath, touching the matter of the complaint.
 

 Section 10506-73, General Code, recites that in such a proceeding it shall be determined whether the accused is guilty of having concealed, embezzled, conveyed away or been in the possession of moneys, goods, chattels, things in action or effects of the trust estate. If there is a finding of guilty, damages shall be assessed, or the court may order the return of the specific thing concealed or embezzled or its equivalent, with a penalty of ten per cent. The court may also determine questions of title to such assets among claimants thereto.
 

 In
 
 Goodrich, Admr.,
 
 v.
 
 Anderson,
 
 136 Ohio St., 509, 26 N. E. (2d), 1016, this court said that the purpose of Sections 10506-67 to 10506-77, inclusive, General Code, is not to furnish a substitute for a civil action to recover judgment for money owing to an estate, but rather to provide a speedy and effective method of discovering assets belonging to the estate and to se
 
 *411
 
 cure possession of them for administration. See, also,
 
 In re Guardianship of Zimmerman et al., Minors,
 
 141 Ohio St., 207, 226, 47 N. E. (2d), 782, 791.
 

 The statutes in question provide a summary means, inquisitorial in nature, to recover specific property, or the proceeds or value thereof, belonging to a trust estate, the
 
 title
 
 to which was in a decedent at his death or in a ward when his guardian was appointed; or to recover property, belonging to a trust estate, con-, cealed, taken or disposed of after the appointment of the fiduciary.
 

 A complaint filed under Section 10506-67, General Code, involves a charge of wrongful or criminal conduct on the part of the person accused.
 

 Undoubtedly such statutes have a useful and proper purpose and should not be too narrowly construed. However, since a finding of guilty or not guilty is required and the imposition of a penalty is mandatory upon a finding of guilty, the statutes should not be extended by implication beyond their manifest purpose, to reach persons or matters not covered by the descriptive terms of the statutes. 18 Ohio Jurisprudence, 575, Section 466; 37 Ohio Jurisprudence, 747, Section 421. Compare Section 10214, General Code.
 

 In the present case, Section 10506-67, General Code, could be successfully invoked by the guardian only on the basis that title to the property claimed was in Miss Black, belonged to her estate for that reason, and that such property was wrongfully withheld. From the evidence it would seem plain that title to the checks and the proceeds thereof were transferred and passed prior to the appointment of the guardian, upon the mutual understanding or agreement that certain acts would be performed in return for the amounts so paid over. If such acts were not performed to the extent or value of the amounts paid, a civil action to recover a money judgment would be the appropriate remedy.
 

 
 *412
 
 It has been repeatedly held in other states having statutes similar to the ones now under consideration that resort may not be had to a discovery proceeding to collect a debt, obtain an accounting or adjudicate rights under a contract.
 
 Johnson
 
 v.
 
 Nelson,
 
 341 Ill., 119, 173 N. E., 77, 88 A. L. R., 849;
 
 Dawdy, Admr.,
 
 v.
 
 Strickland,
 
 378 Ill., 230, 37 N. E. (2d), 817;
 
 In re Carey’s Estate,
 
 11 App. Div., 289, 42 N. Y. Supp., 346;
 
 In re Jastrzewski’s Estate,
 
 252 App. Div., 384, 300 N. Y. Supp., 145.
 

 In its opinion the Court of Appeals stated:
 

 “It appears that the rights of the parties grow out of a contractual arrangement under which monies were paid and services returned and in addition disbursements to third parties made, so that if there be a balance one way or the other, the remedy sounds in assumpsit or accounting, with a money judgment the objective. This situation requires a civil action with appropriate pleadings to define the issues, and no 10% penalty would be included with the judgment.
 

 “The burden is on complainant to prove a possession and concealment contemplated by Section 10506-67
 
 et seq.,
 
 General Code, and the evidence reveals another and different situation.”
 

 We are in accord with such observations. The judgment of the Court of Appeals is therefore affirmed.
 

 Judgment affirmed.
 

 Williams, Turner, Matthias and Hart, JJ., concur.
 

 Bell, J., not participating.