HARRISON, Grdn., Appellee,

v.

FASEYITAN, Appellant, et al.

[Cite as *Harrison v. Faseyitan,* 159 Ohio App.3d 325, 2004-Ohio-6808.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 03 MA 228.

Decided Dec. 9, 2004.

Elliot Legow, for appellee.

A. Robert Steiskal, for appellant.

VUKOVICH, Judge.

{¶ 1} Defendant-appellant Bernice Faseyitan appeals the decision of the Mahoning County Probate Court that upheld a magistrate's decision finding her guilty of concealing assets and ordering her to pay $22,122.35 to plaintiff-appellee Michael Harrison Sr., the guardian of the estate of Elaine Bush. Appellant alleges that appellee failed to establish concealment because she made the withdrawals before the guardianship was established, because she did not hide her transactions, and because the ward allegedly directed her to make the disputed transac-

tions.  Appellant also contends that the court imposed the wrong burden of proof once she established that she had been given money as a gift.  For the following reasons, the judgment of the trial court is affirmed.

## STATEMENT OF THE CASE

{¶ 2} On March 14, 2001, the ward, Elaine Bush, experienced the loss of her husband.  On April 4, 2001, the ward gave appellant, who is her sister, a power of attorney.  A couple weeks later, the ward was hospitalized for what appellant says was depression and schizophrenia but what others say was Alzheimer's dementia.  The ward then moved in with her other sister, Jackie Barbara Kennedy.

{¶ 3} On September 25, 2001, Kennedy filed an application to be appointed guardian over the person and estate of the ward, stating that the ward was mentally incompetent.  Attached was a physician's statement that the ward was diagnosed with Alzheimer's dementia and was not competent to care for herself.  Appellant was served with this application.  A hearing on the application was held before a magistrate, but it was continued until December 11, 2001.

{¶ 4} In the meantime, on November 13, 2001, appellant filed a competing application to be appointed guardian stating, "The prospective ward is incompetent by reason of medical condition as set forth in the attached letter dated October 9, 2001 from Dr. Suman Mishr."  The letter, which was later introduced as an exhibit by appellant in the concealment action, stated that the ward "has Depression and Schizophrenia disorder.  * * * She needs to stay with someone for her care."

{¶ 5} On December 11, 2001, the continued hearing was completed.  Thereafter, the magistrate's decision found the ward to be incompetent and in need of a guardianship of her person and estate.  However, the magistrate denied the applications of both sisters.  Instead, the magistrate held that one of the ward's friends would be appointed as guardian of the person upon proper application.  The magistrate then held that the ward's pastor, the appellee herein, would be appointed as guardian of the estate upon proper application and posting of an appropriate bond.

{¶ 6} Before proceeding any further, we must explain that in the appeal of the guardianship action, this court found that the magistrate's decision, which from some copies appears to have been filed on December 11, 2001, was actually filed on December 19, 2001.  We disclosed that the numeral *1* in the date *19* has been changed by someone with correction fluid in both the time-stamped date and the handwritten date near the magistrate's signature.  *In re Guardianship of Bush,* 7th Dist. No. 02CA16, 02CA84, 2003-Ohio-5440, 2003 WL 22332941.  The probate

court's docket states that a magistrate's judgment was filed on December 11, 2001. Furthermore the guardianship file contains various copies of the magistrate's decision; on some copies the *9* is not visible, but on other copies both the *9* and the added *1* are visible.

{¶ 7} Returning to our recitation of the facts, on December 19, 2001, the trial court adopted the magistrate's decision finding the ward incompetent and in need of a guardianship over her person and estate. The court also agreed that appellee would be appointed guardian of the estate upon proper application and the posting of bond. Appellant filed objections, which were overruled. The letters of guardianship appointing appellee as guardian of the estate were issued on January 4, 2003, upon the requested proper application.

{¶ 8} Near the end of 2002, the probate court instructed appellee to institute a suit against appellant and her brother, Julius Anderson, for concealment of estate assets. The complaint was filed on January 14, 2003. The complaint alleged that appellant admitted that she paid her brother $7,000 from the ward's Key Bank money market checking account, $1,500 from the ward's Sky Bank checking account, and $2,991.50 from the ward's Cavalier Federal Credit Union account, for a total of $11,491.50. The complaint then alleged that appellant failed to account for the remaining $14,112.35 of a $21,112.35 withdrawal from the ward's Key Bank money market checking account. The complaint also claimed that appellant admitted that she had paid herself $8,000 from the ward's Sky Bank account. Finally, the complaint alleged that Anderson possessed three cars belonging to the ward.

{¶ 9} Citations to appear were issued. The matter was heard by a magistrate on April 22, 2003. Although she had previously filed an application to be appointed guardian, appellant claimed that she never believed that the ward was incompetent to manage her own affairs. Rather, appellant argued that the ward was merely depressed because of her husband's death. Appellant claimed that she made the withdrawals at the ward's direction and distributed most of it as cash. She also stated that all withdrawals were made "as a family" after meetings. She explained that the ward's house had been burglarized, so they decided to protect the money in the accounts in case the burglars had the ward's financial information.

{¶ 10} Appellant was questioned about the $21,112.35 withdrawal from Key Bank. Plaintiff's Exhibit Two was a bank statement that showed (and appellant admitted) that the withdrawal took place on December 17, 2001. Appellant claimed that she paid $7,000 to Anderson, $4,000 or 5,000 to Kennedy, and $2,500 to the ward to distribute as Christmas presents. Appellant also suggested that she paid unknown amounts to board up the ward's house after it was broken into, move the ward's furniture, and store the furniture for six months. She had no

receipts or canceled checks. Appellant said that she could come close if asked to account for the $21,112.35; however, she did not then attempt to do so other than the three amounts she previously claimed were paid to Anderson, Kennedy, and the ward. Appellant also admitted that the $8,000 she paid herself was withdrawn from Sky bank around Christmas 2001. Anderson did not appear for the hearing, and appellant presented no evidence other than her own testimony and the physician's letter originally attached to her guardianship application stating that the ward was depressed and schizophrenic.

{¶ 11} On July 23, 2003, the magistrate filed a decision finding that appellant and her brother had concealed assets of the ward's estate. The magistrate determined that appellant had improperly received $8,000 from the Sky Bank account and $14,112.35 from the Key Bank account, for a total of $22,112.35. The magistrate attributed the $14,112.35 to appellant because she could not credibly account for this money. (The magistrate believed that appellant paid Anderson $7,000 from Key Bank and ordered him to reimburse that sum; that is why only $14,112.35 of the $21,113.35 Key Bank withdrawal was attributed to appellant). The magistrate noted that appellant claimed that she had withdrawn this money according to the ward's intent even though she knew the extent of her sister's mental condition from the guardianship proceedings. The magistrate stated that the guardian provided a preponderance of evidence to justify a finding against appellant and that appellant failed to rebut this evidence by clear and convincing evidence. The trial court initially adopted the magistrate's decision the same day.

{¶ 12} Appellant then filed objections on August 7, 2003, specifying three objections. First, she alleged that there was no guardianship until the letters were issued on January 4, 2002, which is after the disputed transactions took place. She pointed to her objections made in pages five and six of the transcript of the magistrate's hearing. In those pages, appellant's counsel mentioned that the magistrate's decision and appellee's application to be appointed guardian of the estate were not filed December 19 and that the letters were not issued until January 4, 2002. Counsel confusingly stated, "I would object to any consideration of any determination by the Court that anything prior to 19th or the 20th—or the 4th—19th of December or the 4th of January be considered, insofar as my client's actions are concerned."

{¶ 13} Appellee's counsel responded that the time-stamp on the court's file indicates December 11, 2001, rather than December 19, 2001. He also argued that regardless of the date of the guardianship, appellant's transactions were invalid because of the ward's known incompetency, and thus, the assets removed were subject to a concealment action. The magistrate overruled appellant's objection.

{¶ 14} Appellant's second objection claimed that she had acted in accordance with the ward's instructions and under her power of attorney. She also argued that her application to be appointed guardian established that her sister was depressed, not incompetent. Appellant's third objection was based upon her testimony that all transactions had been made "as a group and as a family." She also alleged that the magistrate failed to file findings of fact.

{¶ 15} On October 24, 2003, the probate court overruled her objections and adopted the magistrate's decision. The probate court found that the magistrate had stated its findings of fact. Regardless, Civ.R. 53(E)(2) requires findings of fact only if they are requested.

{¶ 16} Substantively, the probate court concluded that appellant's application for guardianship was relevant and that she had been served with the application filed by her sister, which had a physician's statement that the ward was incompetent because of Alzheimer's dementia. The court then found that appellant had failed to prove a gift by clear and convincing evidence. The court noted that she had presented no testimony other than her own regarding the withdrawals. The court agreed that $22,112.35 in improper withdrawals should be attributed to appellant. This appeal followed.

## UNTIMELY OBJECTIONS

{¶ 17} Before addressing appellant's two assignments of error, we must address the timeliness of her objections to the magistrate's decision. The magistrate's decision was filed on July 23, 2003. Pursuant to Civ.R. 53(E)(3)(a), objections to the magistrate's decision must be filed within 14 days of the filing of the magistrate's decision. These objections were filed Thursday, August 7, 2003, the 15th day after the filing of the magistrate's decision. A party is not permitted to assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party timely objected to that finding. Civ.R. 53(E)(3)(d); *State ex rel Booher v. Honda of Am. Mfg., Inc.* (2000), 88 Ohio St.3d 52, 53, 723 N.E.2d 571.

{¶ 18} The Ohio Supreme Court has held that Civ.R. 6(E), known as the three-day mail rule, does not extend the time for filing objections to a magistrate's decision. *Duganitz v. Ohio Adult Parole Auth.* (2001), 92 Ohio St.3d 556, 557, 751 N.E.2d 1058, citing *Pulfer v. Pulfer* (1996), 110 Ohio App.3d 90, 92–93, 673 N.E.2d 656. The Supreme Court stated that Civ.R. 53 requires written objections to a magistrate's decision to be filed within 14 days of the filing of the magistrate's decision, not within 14 days of the serving of the decision. Id.

{¶ 19} Thus, the objections in this case were untimely filed. However, both the magistrate and the trial court (in its initial adoption prior to the filing of

objections) gave erroneous advice at the end of their decisions. The magistrate added the new notice required as of July 1, 2003, in cases where findings of fact and conclusions of law are made; this notice informed the parties of the existing appellate waiver rule applicable when a party fails to timely and specifically object to a finding or conclusion. See Civ.R. 53(E)(2). After setting forth this notice, the magistrate informed the parties that they had 14 days "from receipt" of the decision to file objections. The trial court, in its adoption of the magistrate's decision prior to the filing of objections, gave the same erroneous information. Because the magistrate and trial court incorrectly stated that the time for filing timely objections was from receipt of the decision, we will not hold the untimely filing of the objections against appellant, especially where the decision was mailed to her the day after the decision was filed and she filed her objections a mere one day late.

## ASSIGNMENT OF ERROR NUMBER ONE

{¶ 20} Appellant's first assignment of error provides:

{¶ 21} "Failure to establish concealment is a bar to the complaint of plaintiff."

{¶ 22} Before proceeding with this assignment of error, we note that Anderson is not an appellant herein. The only transactions at issue in this appeal are the $8,000 withdrawal from Sky Bank, which appellant admits occurred near Christmas of 2001, and $14,112.35 of the $21,113.35 withdrawal from Key Bank, which appellant admits occurred on December 17, 2001.

{¶ 23} The magistrate found that over $14,000 of the Key Bank withdrawal was not believably accounted for and that it would be considered as having been retained for appellant's personal benefit. The magistrate also found that the $8,000 withdrawal appellant paid to herself was improper. Thus, appellant was found guilty of concealment of estate assets. Here, appellant admits that she must account for the $14,112.35, but she disputes that she "concealed" this money or the $8,000 in the strictest sense of the word.

{¶ 24} Civ.R. 53 clearly provides that a party cannot assign as error on appeal any finding of fact or conclusion of law unless the party timely *and specifically* objected to that finding or conclusion. Civ.R. 53(E)(2) and (E)(3)(d). We disposed of the timeliness requirement above. However, we must now inquire into the specificity aspect of the rule. "Objections shall be specific and state with particularity the grounds of objection." Civ.R. 53(E)(3)(b). If this requirement is violated, waiver on appeal results. Civ.R. 53(E)(2) and (E)(3)(d). Appellant did not object on the grounds that there is no concealment under R.C. 2109.50 if the defendant does not try to hide the withdrawals.

{¶ 25} Even if she had objected on this ground, her argument is without merit because R.C. 2109.50 is not limited to concealment:

{¶ 26} "Upon complaint made to the probate court of the county having jurisdiction of the administration of a trust estate or of the county wherein a person resides against whom the complaint is made, by a person interested in such trust estate or by the creditor of a person interested in such trust estate against any person suspected of having concealed, embezzled, or conveyed away or of being or having been in the possession of any moneys, chattels, or choses in action of such estate, said court shall by citation, attachment or warrant, or, if circumstances require it, by warrant or attachment in the first instance, compel the person or persons so suspected to forthwith appear before it to be examined, on oath, touching the matter of the complaint."

{¶ 27} Just from the plain language of the statute, it is apparent that the assets or money need not have been "concealed" in the strict sense of the word. Specifically, the statute allows examination of anyone suspected of having "concealed, embezzled, or conveyed away or of being or having been in the possession" of estate assets. Thus, appellant's suggestion that there was no evidence of concealment (because she never hid the transactions) is clearly misguided.

{¶ 28} Under this assignment of error, appellant alludes to another argument raised in her first objection to the magistrate's decision. She claims that a concealment action was improper because R.C. 2109.50 is not a substitute for a civil action for a money judgment or for an accounting. However, she does not elucidate how this general legal principle applies to this case in the argument of this assignment. Rather, we must turn to her statement of the case and presume that her argument revolves around her claim that the transactions at issue were made before the existence of the guardianship.

{¶ 29} It is true that a concealment action under R.C. 2109.50 is not a substitute for a civil action to obtain a money judgment or an accounting. *In re Leiby's Estate* (1952), 157 Ohio St. 374, 381, 47 O.O. 265, 105 N.E.2d 583; *In re Estate of Black* (1945), 145 Ohio St. 405, 410–411, 31 O.O. 31, 62 N.E.2d 90; *Goodrich v. Anderson* (1940), 136 Ohio St. 509, 511, 17 O.O. 152, 26 N.E.2d 1016. A concealment action is, however, the proper tool to recover assets or money taken from an estate. Id.

{¶ 30} This typically means that if a defendant takes a person's money before death or before institution of a guardianship, then a concealment action is not the appropriate remedy because the money was not taken from the estate; rather, it was taken from an individual before the existence of an estate. On the other hand, if a defendant takes a person's money after that person died or after that person became a ward, meaning that an estate was in existence at the time

the money was taken, then a concealment action is proper. Id.; see, also, *Vogler v. Donley* (Dec. 16, 1998), 7th Dist. No. 97BA63, 1998 WL 896466.

{¶ 31} The magistrate's first decision finding the ward incompetent and in need of a guardianship was found to have been filed on December 19, 2001. See *Bush*, 7th Dist. Nos. 02CA16, 02CA84. By way of appellant's testimony and the bank statement contained in Plaintiff's Exhibit Two, the Key Bank withdrawal ($14,-112.35 of which was attributed to appellant) was established as occurring on December 17, 2001. Because the withdrawal apparently occurred before the establishment of the guardianship and thus before the establishment of an estate, appellant insists that a concealment action was not proper.

{¶ 32} Nevertheless, there is another probate statute dealing specifically with guardianships that brings any assets disposed of before creation of the estate back into the estate. This statute specifies:

{¶ 33} "From the service of the notice [of the incompetency/guardianship hearing] until the hearing, no sale, gift, conveyance, or encumbrance of the property of an alleged incompetent shall be valid as to persons having notice of the proceeding." R.C. 2111.04(D).

{¶ 34} This provision pushes back the existence of the "estate" to the date appellant received *notice of alleged incompetency.* Notice of the pending guardianship proceedings was not an issue in this case. Appellant received notice of her sister's application to be appointed guardian in September 2001 and filed her own application to be appointed guardian in November 2001. Thus, she had notice of the incompetency proceedings and pending guardianship decision well before the December transactions at issue.

{¶ 35} Because appellant indisputably had notice of the incompetency proceeding and was herself seeking to be appointed guardian of the estate of an incompetent, her conveyances of the ward's money pending this guardianship decision were not valid. Since the $8,000 gift she paid herself and the $14,112.35 withdrawal that was attributed to her were not valid, the title to the assets remains with the estate. Accordingly, the estate could recover its assets in a concealment action under R.C. 2109.50.[1]

---

1. Besides the fact that R.C. 2111.04(D) invalidated transactions made while the incompetency proceedings were pending, applicability of this statute may be unnecessary as to the $8,000 withdrawal, since appellant stated that this withdrawal was made "around Christmastime." One could interpret her testimony as dating the $8,000 withdrawal after the December 19 decision finding the ward incompetent and in need of a guardianship. That the final issuance of the letters to the actual guardian was pending (as the magistrate did not wish to appoint either of the official applicants) does not mean that an estate was not in existence. See *State v. Sloane* (1851), 20 Ohio 327, 331 (letters of guardianship are just an official certification of the pre-existing judgment entry, nothing more). See, also, R.C. 2101.24(A)(1)(e) and (g)

{¶ 36} In support of this position, we note the Eleventh Appellate District's recent holding that although property that passed by inter vivos gift or transaction is not property of the estate retrievable by an executor under R.C. 2109.50, the probate court can determine that the inter vivos gift or transaction was invalid, in which case the property is an asset of the estate retrievable by R.C. 2109.50. *Rudloff v. Efstathiadis,* 11th Dist. No.2002–T–0119, 2003-Ohio-6686, 2003 WL 22931382 (where a fiduciary takes property, there is a presumption of undue influence that the fiduciary must rebut by clear and convincing evidence of a gift, and the probate court has jurisdiction under R.C. 2101.24(A)(1)(*l*) to decide a declaratory action on the validity of gift).

{¶ 37} Appellant also contends that concealment does not exist where the entire family met and agreed to the withdrawals and payments. However, it is no defense that the family agreed on how to spend the ward's or potential ward's money. This is a case to recover the assets that belong to the ward in order to benefit the ward, not to benefit potential heirs of the ward. This assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER TWO

{¶ 38} Appellant's second assignment of error contends:

{¶ 39} "The probate court has failed to properly determine the burden of proof once a gift has been established."

{¶ 40} The magistrate found that the guardian established concealment by a preponderance of evidence and that appellant failed to rebut this by clear and convincing evidence. The trial court reiterated that appellant failed to prove a gift by clear and convincing evidence.

{¶ 41} Appellant argues that she was not required to prove anything by clear and convincing evidence. She claims that because she had a power of attorney, the gift raised a presumption of undue influence, which she could rebut by just a preponderance of the evidence. She continues by stating that if she, as an agent with a power of attorney, rebutted the presumption of undue influence, then the guardian had to prove the lack of a gift by clear and convincing evidence. She cites this court's case of *Gotthardt v. Candle* (1999), 131 Ohio App.3d 831, 723 N.E.2d 1144, in support.

---

(listing guardian appointment and adjudication of incompetency subject to a guardianship as *separate* aspects of the probate court's jurisdiction). The probate court is the actual and superior guardian upon establishment of a guardianship for a ward determined incompetent. *In re Clendenning* (1945), 145 Ohio St. 82, 93, 30 O.O. 301, 60 N.E.2d 676; R.C. 2111.50(A)(1); R.C. 2111.01(B) (a ward is defined as one for whom a guardian is acting *or for whom the probate court* is acting pursuant to R.C. 2111.50).

{¶ 42} *Gotthardt* is wholly distinguishable, and in fact, its holding actually implicitly opposes appellant's proposition. In *Gotthardt,* an executor brought a concealment action against a person with a power of attorney who made a withdrawal prior to the decedent's death and placed those funds in a joint and survivorship account, naming herself as beneficiary. Our holding was limited to presumptions surrounding joint and survivorship accounts, which are not at issue in this case. We were not speaking of the burden surrounding withdrawals made during the pendency of a guardianship.

{¶ 43} Moreover, we stated that the executor would have the burden to show, by clear and convincing evidence, fraud, duress, undue influence, *or lack of capacity.* Id., 131 Ohio App.3d at 835–836, 723 N.E.2d 1144. Here, the guardian had no burden to show lack of capacity. This was demonstrated by the fact of the prior establishment of the guardianship. The ward's incompetency was already litigated and decided by the probate court in the guardianship action and could not be relitigated.

{¶ 44} Appellant repeatedly complains that no one asked her what she had paid on behalf of the ward and that no one asked her to account for her expenditures. However, that was her burden.

■ {¶ 45} Ohio Supreme Court case law holds that the plaintiff in a concealment action must merely make a prima facie case for inclusion of certain assets in the estate and the defendant who alleges that those assets were gifts to him can rebut that prima facie case only by clear and convincing evidence. *In re Fife's Estate* (1956), 164 Ohio St. 449, 455–456, 58 O.O. 293, 132 N.E.2d 185. See, also, *Lauerman v. Destocki* (1993), 87 Ohio App.3d 657, 666, 622 N.E.2d 1122; *Merce v. Duren* (Aug. 13, 1991), 10th Dist. No. 91AP–346, 1991 WL 159859. We also note our review of the Eleventh District's *Rudloff* case under the first assignment of error. There, the court held that a fiduciary with a power of attorney who gives money to himself creates a presumption that he exercised undue influence, which *he* may rebut only with clear and convincing evidence when a later executor brings a concealment action. It was the party who had the power of attorney who had to prove something by clear and convincing evidence, not the plaintiff. The magistrate and trial court thus applied the appropriate standards of proof.

{¶ 46} Regardless, those cases dealt with executors bringing the concealment action for a decedent's estate. Here, we have a guardian bringing a concealment action for a ward. This fact is important because of R.C. 2111.04(D), which per se invalidates any gifts made to or taken by a person with notice of an incompetency proceeding. For all of the foregoing reasons, the guardian set forth sufficient evidence to recover in a concealment action under the circumstances of this case.

{¶ 47} Under both assignments of error, appellant presents arguments on weight of the evidence. For instance, she denies that she kept the unaccounted-for $14,112.35, pointing to her testimony on how she distributed the money to people other than herself. Considering the circumstances that existed in this case, the magistrate could rationally decide to find incredible appellant's testimony that she used up over $14,000 by giving the ward $2,500 cash, giving her other sister $4000 to $5000, and paying for unspecified repairs, moving, and storage. She presented no corroborating testimony or evidence, she failed to produce receipts or even state amounts for the repairs, moving, and storage, she did not call her sister to testify, and she did not seek to bring that sister in as a third party who received assets with notice of the pending guardianship. The magistrate could also choose to disbelieve her testimony that the ward instructed her to make this withdrawal (and the $8,000 withdrawal for an alleged gift).

{¶ 48} The magistrate was in the best position to judge the credibility of appellant's testimony; he was able to view her demeanor, voice inflections, and gestures. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. A ward's assets are subject to control by the probate court and the guardian of the estate, not by anyone with a prior power of attorney. Even transactions made prior to establishment of a guardianship are invalid where R.C. 2111.04(D) is applicable; meaning that since the incompetency issue was pending, any claimed instructions of the ward to make gifts of money could not legally be followed, even by one claiming to hold a power of attorney. Thus, the magistrate and the probate court could properly conclude that appellant knew that the ward was alleged to be incompetent, knew that guardianship proceedings were pending, and still took assets from the estate for her own benefit.

{¶ 49} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Judgment affirmed.

WAITE, P.J., and GENE DONOFRIO, J., concur.