[Cite as *Roefer v. Riley*, 2025-Ohio-272.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| ANITA ROEFER, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 113742 |
| v. | : | |
| MICHELLE RILEY, | : | |
| Defendant-Appellee. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN
PART AND REMANDED
**RELEASED AND JOURNALIZED:** January 30, 2025

Civil Appeal from the Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2019ADV248688

***Appearances:***

Fred D. Middleton, *for appellant.*

EILEEN A. GALLAGHER, A.J.:

{¶ 1} Anita Roefer ("Roefer") appeals from the probate court's judgment entry granting in part and denying in part her claim for concealment of estate assets and granting in part and denying in part her sister Michelle Riley's ("Riley") counterclaim for concealment of estate assets. For the following reasons, we affirm

the probate court's judgment in part, reverse in part and remand this case to the probate court to issue a new journal entry consistent with this opinion.

## I. Facts and Procedural History

{¶ 2} The following facts are taken from the magistrate's decision and the probate court's final judgment in this case and the procedural history is taken from the docket.

{¶ 3} Roefer and Riley are the daughters of Sheila Barnes ("Barnes"). Barnes' health began to deteriorate in July 2015. In late 2015, Riley moved in with Barnes and Riley's husband moved in with them shortly thereafter. About this same time, Barnes' cash withdrawals and expenses "escalated." Barnes had a stroke in October 2016[1] and, in January 2017, Barnes executed a durable power of attorney ("POA") appointing Riley as her agent.

{¶ 4} On April 20, 2017, Roefer paid $4,051.22 to satisfy a lien against Barnes' 2012 Buick Regal.

{¶ 5} In May 2017, a competency evaluation was conducted on Barnes in which she was diagnosed with dementia and the appointment of a guardian was recommended.

---

[1] The magistrate's decision states that Barnes suffered the stroke in October 2016. The probate court's judgment entry states that Barnes suffered the stroke in June 2017. Our review of the record shows that Barnes suffered the stroke in October 2016.

{¶ 6} On May 23, 2017,[2] Barnes transferred title to the Buick to Roefer. Also on May 23, 2017,[3] Roefer executed a waiver and consent to the appointment of Riley as guardian for Barnes. On June 30, 2017, Barnes revoked the January 2017 POA appointing Riley as her agent and executed a new POA appointing Roefer as her agent. Roefer and Riley, each acting under their perceived authority stemming from competing POAs over Barnes, made or authorized financial transactions concerning some of Barnes' assets, including paying personal expenses using Barnes' debit cards, withdrawing cash from Barnes' accounts using Barnes' ATM card and cashing in one of Barnes' annuities.

{¶ 7} In August 2017, Riley filed an application for guardianship over Barnes based on the May 2017 competency evaluation. In October 2017, the court appointed an independent, nonfamily member, Kathryn T. Joseph (the "Guardian"), as guardian of Barnes' person and estate. On March 25, 2019, Barnes died. Roefer, Riley and their brother Reginald were beneficiaries under Barnes' will.

{¶ 8} On December 4, 2019, Roefer filed a complaint against Riley alleging that Riley concealed Barnes' estate assets. Riley responded by filing an answer and a counterclaim against Roefer for concealment of Barnes' estate assets. A

---

[2] The probate court's final judgment entry states that the title transfer of the Buick "took place on May 24, 2023." Our review of the record shows that the title transfer occurred on May 23, 2017.

[3] The probate court's judgment entry states that Roefer executed the waiver and consent on May 23, 2023. Our review of the record shows that Roefer signed the waiver and consent on May 23, 2017. We note that this finding is based on testimony presented at the concealment proceeding. It does not appear that a copy of this waiver and consent was admitted into evidence or is otherwise a part of this record on appeal.

proceeding was held in front of a magistrate on November 23, 2022. Almost one year later, on October 6, 2023, the magistrate issued a decision granting in part and denying in part Roefer's "complaint"[4] and Riley's counterclaim. On October 23, 2023, Roefer filed an objection to the magistrate's decision alleging the following: "The [c]onclusion that . . . Roefer concealed the transfer of an estate asset and insurance payments totaling $9,722.45 is not based in the facts of the decision or the law applied herein."

{¶ 9} On February 21, 2024, the court both dismissed Roefer's objection to the magistrate's decision as untimely and overruled Roefer's objection to the magistrate's decision on the merits.[5] Furthermore, the court adopted the magistrate's decision finding that Riley concealed estate assets in the amount of $11,641.19 and Roefer concealed estate assets in the amount of $10,695.06.

{¶ 10} Roefer appeals and raises five assignments of error for our review:

I. The trial court committed plain error by ruling the transfer of the Buick Regal to . . . Roefer was a concealment of estate assets.

II. The trial court committed plain error in entering judgment for automobile insurance premiums against [Roefer] for bank transfers that occurred when [Riley] was the court appointed guardian and the

---

[4] We are aware that courts do not grant or deny a "complaint." Nonetheless, this is the language that the magistrate used in the November 23, 2022 decision.

[5] As a practical note, when a trial court finds that a document is untimely filed, the recommended ruling is to strike that document from the record. The consequence of striking a filing from the record is that it is no longer part of the record for purposes of appeal. After striking a document from the record, the trial court need not rule on the merits of that filing. In this case, Riley filed a motion to strike Roefer's objection to the magistrate's decision as untimely. The probate court did not rule on this motion, thus presumptively denying it.

payments were returned during Attorney Joseph's guardianship control.

III. . . . Riley took notable large expenditures for personal use during the period she knew of the incompetency of Barnes but failed her burden of showing evidence that Barnes made *inter vivos* "gifts" and the court should order her return of the value of the property.

IV. The court committed plain error in finding the value of the vehicle when it was mistaken when the manifest weight of the evidence shows the defendant never presented any admissible evidence of value and misquoted the model and value of the vehicle.

V. The trial court erred in entering judgment that the objection to [the] magistrate's decision was untimely.

{¶ 11} For ease of discussion, we address Roefer's assignments of error out of order. Additionally, we note that Riley did not file an appellate brief in this case.

## II. Law and Analysis

### a. Failure to Timely File Objections to the Magistrate's Decision and Plain Error

{¶ 12} In Roefer's fifth assignment of error, she challenges the probate court's dismissing and/or overruling her objection to the magistrate's decision based on its finding that the objection was untimely filed.

{¶ 13} Pursuant to Civ.R. 53(D)(3)(b)(i), a "party may file written objections to a magistrate's decision within [14] days of the filing of the decision." Failure to object to a magistrate's findings of fact or conclusions of law waives all but plain error on appeal. Civ.R. 53(D)(3)(b)(iv).

{¶ 14} In this case, the magistrate's decision was filed on October 6, 2023, and Roefer filed her objection to the magistrate's decision on October 23, 2023, without leave of court. To comply with Civ.R. 53(D)(3)(b)(i), Roefer needed to file

her objection by October 20, 2023, which was 14 days after the magistrate's decision was filed. Therefore, Roefer's objection to the magistrate's decision was untimely.

{¶ 15} On appeal, Roefer argues that Civ.R. 6(D) "allows three days for delivery of the decision and gives an extension of time to file the objection to a decision mailed to a party." Roefer also argues that Civ.R. 6(D) "would allow another three days since the mailing was three days after filing due to a holiday delay in mailing caused by the Columbus Day court closing." We note that in 2023, Columbus Day fell on Monday, October 9.

{¶ 16} Civ.R. 6(D), which is often referred to as the "three-day mail rule," states in part as follows: "Whenever a party has the right . . . to do some act . . . within a prescribed period after the service of a notice or other document upon that party and the notice or paper is served upon that party by mail . . . three days shall be added to the prescribed period."

{¶ 17} In *Duganitz v. Ohio Adult Parole Auth.*, 92 Ohio St.3d 556, 557 (2001), the Ohio Supreme Court stated that the three-day mail rule "does not extend the time for filing objections to a magistrate's decision under Civ.R. 53 . . ." *See also Kebe v. Bush*, 2019-Ohio-4976, ¶ 12 (8th Dist.) ("This court is . . . bound by the Ohio Supreme Court's holding in *Duganitz*, which clearly states that Civ.R. 6(D) does not extend the time for filing objections to a magistrate's decision.").

{¶ 18} Additionally, Civ.R. 6(A) governs the computation of time for the filing of "other papers subsequent to the original complaint." Legal holidays, such as Columbus Day, are excluded from the computation in two scenarios:

The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday. When the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation.

{¶ 19} In this case, the "last day of the period" fell on Friday, October 20, 2023, which was not a legal holiday, and the "period of time . . . allowed" is 14 days, which is not "less than seven days." Therefore, Roefer's period of time to file objections to the magistrate's decision was not extended under Civ.R. 6. Roefer failed to file her objection within the 14-day allotment and the trial court did not err by finding that her objection was untimely.

{¶ 20} Accordingly, Roefer's fifth assignment of error is overruled.

{¶ 21} We review Roefer's remaining assignments of error under a plain error standard. *See In re Guardianship of Ronald Foster*, 2019-Ohio-1649, ¶ 4 (8th Dist.) ("[I]n light of the fact that Foster did not file objections to the magistrate's decision personally or through his appointed counsel, we can only review for plain error . . . ."); *In re C.G.*, 2023-Ohio-4239, ¶ 40 (6th Dist.) ("As to appellant's substantive challenges to the probate court judgments, she waived all but plain error . . . on appeal by failing to file written objections within the time permitted by Civ.R. 53(D) . . . .").

In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse

effect on the character of, and public confidence in, judicial proceedings.

*Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997). *See also Reichert v. Ingersoll*, 18 Ohio St.3d 220, 223 (1985) ("The plain-error doctrine permits correction of judicial proceedings when error is clearly apparent on the face of the record and is prejudicial to the appellant.").

### b. Partial Transcript

{¶ 22} Pursuant to Civ.R. 53(D)(3)(b)(iii), objections to a magistrate's factual findings "shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available."  Similarly, App.R. 9(C) states that "if a transcript is unavailable . . . the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection."  Additionally, an App.R. 9(C) statement of evidence "shall be . . . submitted to the trial court for settlement and approval."

{¶ 23} In this case, we note, as did the probate court, that "the transcript filed was a partial transcript that began mid testimony of . . . Riley, and Roefer has not provided an Affidavit of Evidence as to the missing portion of the testimony."  The probate court further found that

> its review is limited to the contents of the partial transcript and the Magistrate's findings of fact as to the hearing. . . . The Court finds that when reviewing Roefer's objections on a misapplication of fact by the Magistrate, the Court cannot undertake an independent review of the evidence as submitted at the hearing without the entire transcript or without an Affidavit of Evidence.  The Court further finds that without a complete transcript or an accompanying Affidavit of Evidence as to

the missing portion of the transcript, the Court cannot determine whether it has all relevant evidence as to the objections made by Roefer.

{¶ 24} Although we are limited to reviewing for plain error in this case, because Roefer did not file timely objections to the magistrate's decision, we are further limited in our review because the transcript that is part of the record is a partial transcript and Roefer did not submit a statement of the evidence in the trial court, pursuant to Civ.R. 53(D)(3)(b)(iii) or in this court, pursuant to App.R. 9(C).

### c. Failure to Comply with App.R. 12 and 16

{¶ 25} Roefer's appellate brief does not contain citation to any legal authority, which is required pursuant to App.R. 16(A)(7), regarding assignments of error two and three. Pursuant to App.R. 12(A)(2), this court "may disregard an assignment of error presented for review if the party raising it fails to . . . argue the assignment . . . as required under App.R. 16(A)." This court has consistently held that an "'appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2) if an appellant fails to cite to any legal authority in support of an argument as required by App.R. 16(A)(7).'" *Siemientkowski v. State Farm Ins. Co.*, 2005-Ohio-4295, ¶ 23 (8th Dist.). *See also Strauss v. Strauss*, 2011-Ohio-3831, ¶ 26 (8th Dist.), quoting *Cardone v. Cardone*, 1998 Ohio App. LEXIS 2028 (9th Dist. May 6, 1998) ("If an argument exists that can support this assigned error, it is not this court's duty to root it out.").

{¶ 26} In Roefer's second assignment of error, she argues that the court erred by "entering judgment of concealment of automobile insurance premiums" when the "payments were returned during Attorney Joseph's guardianship control."

Not only does Roefer fail to cite any legal authority to support this assignment of error, she fails to point out where in the record there is evidence that the insurance premiums at issue were paid from assets belonging to Barnes' estate or where in the record there is evidence that these alleged payments were "returned." *See In re M.K.L.*, 2023-Ohio-79, ¶ 16 (8th Dist.) (holding that this court is "authorized to summarily overrule [an] argument because [an appellant] has failed to comply with App.R. 12(A)(2) and 16(A)(3) by failing to make specific references to the record substantiating her claim and identifying portions of the record where the alleged errors are reflected").

{¶ 27} In Roefer's third assignment of error, she argues that "Riley took notably large expenditures for personal use during the period she knew of the incompetency of Barnes but failed her burden of showing evidence that Barnes made *inter vivos* 'gifts' . . . ." On appeal, Roefer has failed to cite legal authority to support this argument.

{¶ 28} We note that, as an example under this assignment of error, Roefer argues as follows:

> The defendant Riley opened a new Huntington bank account in her name and [Barnes'] name and had the Great American Lif[e] Insurance Company send $8228.00 withdrawal with $1645.00 withheld for taxes to deposit in the Huntington Account. . . . Riley's actions of withdrawing the funds to herself clearly prove she was taking the funds, $6500.00 for herself from the Huntington Bank Account.

{¶ 29} Our review of the record shows that the probate court found "a wire transfer of $6,582.90 from the Great American Insurance Group . . . to the

Huntington Bank Checking Account" was a concealed asset of Barnes' estate and "any distribution to Riley from the Estate of . . . Barnes should be reduced in" this same amount plus a 10 percent penalty. In other words, it appears that Roefer is arguing that the court should order Riley to return this amount to Barnes' estate despite that the court ordered Riley's portion of Barnes' estate be reduced by this exact amount.

{¶ 30} Accordingly, Roefer's second and third assignments of error are overruled.

### d. Concealment of Estate Assets

### i. Overview of R.C. 2109.50 Proceedings

{¶ 31} Pursuant to R.C. 2109.50:

> Upon complaint made to the probate court . . . by a person interested in the estate, testamentary trust, or guardianship . . . against any person suspected of having concealed, embezzled, or conveyed away or of being or having been in the possession of any moneys, personal property or choses in the action of the estate, testamentary trust, or guardianship, the court shall . . . compel the person or persons suspected to appear before it to be examined, on oath, touching the matter of the complaint.

{¶ 32} Ohio courts have held that a "concealment action is . . . the proper tool to recover assets or money taken from an estate." *Harrison v. Faseyitan*, 2004-Ohio-6808, ¶ 29 (7th Dist.).

{¶ 33} In *Fife v. Beck (In re Estate of Fife)*, 164 Ohio St. 449, 453 (1956), the Ohio Supreme Court set forth the following framework for concealment-of-estate-assets proceedings under R.C. 2109.50:

A proceeding for the discovery of concealed or embezzled assets of an estate is a special statutory proceeding of a summary and inquisitorial character, and, since, under Section 2109.52, Revised Code, a finding of "guilty" or "not guilty" is required, with the imposition of a penalty upon a finding of guilty, the proceeding is quasi criminal in nature. Its purpose is to facilitate the administration of estates by expeditiously bringing into such estates those assets which rightfully belong there. *Goodrich, Admr., v. Anderson*, 136 Ohio St., 509, 26 N. E. (2d), 1016; *In re Estate of Black*, 145 Ohio St., 405, 62 N. E. (2d), 90; *In re Estate of Leiby*, 157 Ohio St., 374, 105 N. E. (2d), 583.

In the opinion in the case of *Davis, Admr., v. Johnson*, 332 Mo., 417, 421, 58 S. W. (2d), 746, 748, it is remarked:

"The procedure authorized by those statutes [for the discovery of assets] 'is a summary and quick method of bringing property into the estate' . . . devised not merely to discover assets, but also to expedite the administration of estates by affording a new and special remedy for collecting assets."

{¶ 34} In *Wozniak v. Wozniak*, 90 Ohio App.3d 400, 407 (9th Dist. 1993), the Ninth District Court of Appeals held the following regarding the purpose and focus of concealment actions under R.C. 2109.50:

The purpose of R.C. 2109.50 is to provide a speedy and effective method of discovering assets belonging to the estate and securing their recovery. *Ukrainiec v. Batz* (1982), 24 Ohio App.3d 200, 202, 24 OBR 323, 325, 493 N.E.2d 1368, 1369. The statute is not intended as a substitute for a civil action to collect a debt, obtain an accounting, adjudicate rights under a contract or recover judgment for money owing an executor or administrator. *Id.*

. . .

[T]he inquiry under R.C. 2109.50 focuses on the ownership of the asset and whether possession of the asset is being impermissibly concealed or withheld from the estate. Thus, a plaintiff has stated an actionable cause under R.C. 2109.50 if he alleges that the asset is the exclusive property of the estate and that the defendant has unauthorized possession of the asset or in some way has impermissibly disposed of it
. . . .

{¶ 35} In *Harrison v. Faseyitan*, 159 Ohio App.3d 325, 333-334 (7th Dist. 2004), the Seventh District Court of Appeals opined on the practical and proper application of R.C. 2109.50 to hypothetical situations:

> This typically means that if a defendant takes a person's money before death or before institution of a guardianship, then concealment is not the appropriate remedy because the money was not taken from the "estate" rather it was taken from an individual before the existence of an estate. On the other hand, if a defendant takes a person's money after that person died or after that person became a ward, meaning that an estate was in existence at the time the money was taken, then a concealment action is proper. . . . *See also*, *Vogler v. Donley* (Dec. 16, 1998), 7th Dist. No. 97BA63, 1998 Ohio App. LEXIS 6175.

{¶ 36} The *Harrison* Court further explained various defenses that can be used to "bring[] any pre-disposed of assets back under the title of the estate." *Harrison* at ¶ 32. For example, R.C. 2111.04(D) states that "[f]rom service of notice [of guardianship proceedings] until the hearing, no sale, gift, conveyance, or encumbrance of the property of an alleged incompetent shall be valid as to persons having notice of the proceeding." *See Harrison* at ¶ 34 (hold that R.C. 2111.04(D) "pushes back the existence of the 'estate' to the date appellant received *notice of alleged incompetency*."). (Emphasis in original.) Another example of a defense to a concealment allegation concerns the invalidity of inter vivos gifts. *Harrison* at ¶ 36, citing *Rudolph v. Efstathiadis*, 2003-Ohio-6686 (11th Dist.), noted as follows: "[A]lthough property that passed by inter vivos gift or transaction is not property of the estate retrievable by an executor under R.C. 2109.50, the probate court can determine that such inter vivos gift or transaction was invalid in which case the property is an asset of the estate retrievable by R.C. 2109.50."

### ii. Analysis

{¶ 37} In Roefer's first assignment of error, she argues that the court erred "in ruling the transfer of the Buick . . . to . . . Roefer was a concealment of estate assets." In Roefer's fourth assignment of error, she argues that the court erred "in finding the value of the [Buick was $13,500] when . . . the evidence shows [Riley] never presented any admissible evidence of value and misquoted the model and value of the vehicle."

{¶ 38} The partial transcript reveals that Roefer testified that she and Barnes went to the "title bureau" on May 23, 2017, and Barnes transferred title to the Buick to Roefer. Roefer further testified that when she and Barnes returned to Barnes' house, Riley asked Roefer if Barnes transferred title of the Buick to Roefer and Roefer answered, "Yes, she did."

{¶ 39} Riley, on the other hand, testified that in May 2017, Roefer asked Barnes if Roefer could have the Buick. Riley told Barnes that Barnes' caretakers needed the Buick to take Barnes to doctors' appointments and to run other errands. Riley next testified as follows:

> And then I found out that [Roefer] got access to getting the car. She got the title, um, for the car. And I was thinking at the time well maybe she's getting the title of the car, uh, looking at these, uh pictures from the text messages that it's just gonna be here, the title's gonna — the title's paid off and there's a title available. But I had no recollection that she was gonna be — that the car was gonna be hers to have and not stay there on the premises.

{¶ 40} The magistrate found, in the October 6, 2023 decision, that "Roefer received the title to Barnes automobile 'after May 6, 2017.'" The probate court

found, in the February 21, 2024 final judgment entry, that title of the Buick was transferred to Roefer on May 24, 2017. "Moreover, the Court finds it is important to highlight, that only one day after contemplating and agreeing that, due to alleged incompetency, . . . Barnes should be under guardianship, with that decision fresh in mind, . . . Roefer chose to transfer . . . Barnes['] car to herself for her own personal benefit." There is no evidence in the record to support the probate court's finding that title to the Buick was transferred to Roefer on May 24, 2017. Roefer testified that title was transferred on May 23, 2017, and Riley testified that title was transferred in May 2017.

{¶ 41} The only evidence in the record about when Roefer signed the waiver and consent to appoint Riley as Barnes' guardian is Roefer's testimony that this occurred on May 23, 2017, which is the same day that title to Barnes' Buick was transferred to Roefer. Therefore, the probate court's finding that title was transferred to Roefer "only one day after contemplating and agreeing that, due to alleged incompetency, . . . Barnes should be under guardianship" is unsupported by the record. Furthermore, there is no evidence in the record about which of these two events that happened on the same day — Roefer's signing of the "consent and waiver" and Barnes' transferring title to the Buick to Roefer — occurred first.

{¶ 42} Turning to the value of the Buick, the only evidence in the record that we can locate is the following testimony from Riley:

Q: Did you ever look up its value on like Kellybluebook.com?

. . .

A: So I looked up the vehicle. It just indicated that because of the low mileage that my mother had, um, and the year and the model of the vehicle that the vehicle was in excellent condition.

Q: Do you recall seeing that it was valued at 13,000 —

[Roefer's counsel]: Objection.

THE COURT: Sustained. You can't . . . give her the answer. She already said she doesn't recall.[6]

{¶ 43} Upon review, we find that the court plainly erred when it included the value of the Buick among the assets that Roefer concealed from Barnes' estate. In *In re Estate v. Holmes*, 1993 Ohio App. LEXIS 2926 (8th Dist. June 10, 1993), this court held that the "plaintiff had the burden to produce evidence that defendants were guilty of concealment" of an estate asset pursuant to R.C. 2109.50. Riley's counterclaim alleged that Roefer concealed Barnes' Buick, which Riley also alleged was part of Barnes' estate. Therefore, Riley acted as the "plaintiff" regarding allegations of concealment of the Buick and Riley failed to meet her burden to produce evidence of such.

{¶ 44} The evidence in the record regarding the title transfer is that it occurred in "May 2017" and that it occurred on May 23, 2017. Taking into consideration that the court sustained Roefer's counsel's objection to Riley's testimony about the value of the Buick, there is no evidence in the record concerning the value of the car. We note that Roefer argues in her fourth assignment of error that Riley "misquoted the model and value of the vehicle." Specifically, Roefer

---

6 Our review of Riley's testimony in the partial transcript shows that she did not say that she did not recall the value of the Buick.

argues that "the trial court assumed the value was based on a value of a Buick SUV instead of . . . Barnes' Buick Regal sedan." Roefer does not cite to where in the record this evidence was introduced. Our review of the record, including the admitted exhibits and the partial transcript, does not reveal any mention of a "Buick SUV" or any other evidence of the value of any model of Buick. It is possible that this evidence was presented at the concealment proceeding during the portion for which we have no transcript. However, we will not speculate about possibilities. *See, e.g., Mathis v. Cleveland*, 46 Ohio App.3d 168, 170 (8th Dist. 1988) ("The record, however, is silent as to why the court [entered judgment] and this court will not engage in speculation as to why the court ruled the way it did.").

{¶ 45} Having found an obvious error on the face of the record, we turn to whether Roefer was prejudiced by the court finding that she concealed the title transfer of the Buick, the Buick was an asset of Barnes' estate and the Buick was valued at $13,500, as well as the court's ruling that Roefer's portion of Barnes' estate be reduced by $13,500 less $4,051.22 that Roefer paid on the lien against the Buick plus a 10 percent statutory penalty. Upon review, we find that Roefer was indeed prejudiced. Ohio law holds that "an error rises to the level of plain error only if, but for the error, the outcome of the proceedings would have been different." *State v. Bouie*, 2019-Ohio-4579, ¶ 42 (8th Dist.). Had the probate court properly found that, based on the evidence in the record, Riley failed to show that Roefer concealed the title transfer of the Buick from Barnes' estate, Roefer's estate distribution reduction of more than $10,000 would be eliminated.

{¶ 46} Accordingly, Roefer's first and fourth assignments of error are sustained.

{¶ 47} The probate court's judgment is affirmed in part and reversed in part. This case is remanded to the trial court issue a journal entry reflecting that the title transfer of Barnes' Buick to Roefer was not a concealment of an estate asset and eliminating the value of the Buick's reduction in Roefer's estate distribution.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, probate division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER, J., and
MARY J. BOYLE, J., CONCUR