[Cite as *Singhaus v. Johnson*, 2010-Ohio-6270.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| MARGIE SINGHAUS, EXECUTRIX OF THE ESTATE OF PHILLIP DELBERT, | ) ) ) | |
| PLAINTIFF-APPELLEE, | ) ) | |
| VS. | ) ) | CASE NOS. 09-BE-25 09-BE-26 |
| JOHN JOHNSON, ET AL., | ) ) | OPINION |
| DEFENDANTS-APPELLANTS. | ) ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common Pleas, Probate Division of Belmont County, Ohio
Case No. 08CV610

JUDGMENT:     Affirmed

APPEARANCES:
For Plaintiff-Appellee     Attorney Keith A. Sommer
409 Walnut Street
P.O. Box 279
Martins Ferry, Ohio 43935

For Defendant-Appellant     Attorney Larry Hayman
John Johnson     3010 Hayden Road
Columbus, Ohio 43235

For Defendant-Appellant     Attorney Beverly J. Farlow
Stephanie McDowell     Attorney Ross A. Gillespie
270 Bradenton Ave., Suite 100
Dublin, Ohio 43017

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: December 15, 2010

DONOFRIO, J.

{¶1} Defendants-appellants, John Johnson and Stephanie McDowell, appeal from separate Belmont County Probate Court judgments finding them guilty of concealing assets in the amount of $4,500 jointly and severally that belonged to the Estate of Phillip Delbert.

{¶2} The parties to this case, along with most of the others involved, are relatives of the late Phillip Delbert. Phillip was married to Alberta Delbert. They had three children together: Joan Johnson, who married Appellant John Johnson (John J.); Margie Singhaus, who married Ralph Singhaus; and John Delbert (John D.). Margie is the executrix of the Estate of Phillip Delbert, the plaintiff-appellee in this case (the estate). Appellant Stephanie McDowell is the daughter of John J. and Joan. Phillip died on December 5, 2008.

{¶3} During Phillip's last months, numerous family members were in and out of the Delberts' house. According to various witnesses, Margie found approximately $9,000 in a shoe box in the house. Margie stated that she counted the money and photographed it on the bed. Witnesses stated that Stephanie took the money home to put in her safe. Witnesses also testified that John J. made several statements indicating that he had the $9,000.

{¶4} The estate filed a complaint on March 24, 2009, asserting that John J. and Stephanie concealed $9,000 cash belonging to Phillip's estate in addition to various items of personal property.

{¶5} The matter proceeded to trial where the probate court heard testimony from various members of the Delbert family and a few others. At the conclusion of the testimony, the trial court granted John's motion for a directed verdict on the concealment of personal property claim. It also found Stephanie not guilty on the concealment of personal property claim. Next, the court found that the evidence was undisputed that $9,000 in cash was found in the Delbert home and that Stephanie took it to her house. It further found that John J. also had possession of the $9,000 cash. The court concluded that the $9,000 belonged one-half to Alberta and one-half to Phillip. Thus, the court determined that it would deal only with the $4,500 that

belonged to Phillip. It ultimately concluded that Stephanie and John J. were guilty of concealment of assets belonging to Phillip's estate in the amount of $4,500 jointly and severally.

{¶6} In a separate judgment entry, the court granted the estate's motion for ten percent statutory penalty and court costs. It denied the estate's request for interest and attorney's fees.

{¶7} Stephanie filed a timely notice of appeal on August 24, 2009. John J. filed a timely notice of appeal on September 14, 2009. This court consolidated the two appeals.

{¶8} Both Stephanie and John J. generally assert that the court's findings that they are guilty of concealment of assets belonging to the estate are not supported by the evidence. Thus, the same standard of review applies to each of them.

{¶9} R.C. 2109.50 sets out the procedure to be followed when it is suspected that any person has concealed the assets or property of an estate. A complaint filed under R.C. 2109.50 is quasi-criminal in nature. *In re Estate of Popp* (1994), 94 Ohio App.3d 640, 647. However, it is the civil procedure laws that govern the action in probate court. Id.

{¶10} Judgments supported by some competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence. *C .E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, at the syllabus. See, also, *Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223, 226. Reviewing courts must oblige every reasonable presumption in favor of the lower court's judgment and finding of facts. *Gerijo,* 70 Ohio St.3d at 226, (citing *Seasons Coal Co., Inc. v. Cleveland* [1984], 10 Ohio St.3d 77). In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. Id. In addition, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 162.

{¶11} We now turn to the parties' assignments of error.

{¶12} Stephanie raises a single assignment of error, which states:

{¶13} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO RELY ON COMPETENT CREDIBLE EVIDENCE IN FINDING APPELLANT STEPHANIE MCDOWELL GUILTY OF CONCEALMENT OF ASSETS BELONGING TO THE ESTATE OF PHILLIP DELBERT IN THE AMOUNT OF 4500.00."

{¶14} Stephanie argues that the trial court erred in finding that she concealed assets belonging to the estate.

{¶15} Firstly, Stephanie argues the evidence demonstrated that there was no cash to be concealed. She points out that Phillip and Alberta never disclosed any cash during their Medicaid application. She further points out that neither Margie nor John D. reported any cash to the Job and Family Services worker handling the Medicaid application, which if the cash existed, would have constituted Medicaid fraud. Stephanie also notes that the Delberts had very few resources and even received food stamps. And she asserts that numerous witnesses went through the Delberts' house during 2008 and none of them found any cash. Finally, she asserts that no witness testified that they ever saw her with any cash.

{¶16} The evidence going to the existence of the cash is as follows.

{¶17} Margie testified that on August 20, 2008, she found $9,800 in the Delberts' house. (Tr. 192). She stated that it was in a child's shoe box. (Tr. 198). Margie stated that she counted and photographed the money. (Tr. 193; Pt. Exs. O, P). She also stated that she told Stephanie and Stephanie's brother, Mark, about the money that night. (Tr. 197-98).

{¶18} Michele Engleman is a nursing home case manager at the Belmont County Department of Jobs and Family Services. She handled Phillip's and Alberta's application for Medicaid, which was ultimately denied for excess resources. Engleman testified that in October 2008, John J. told her that $9,000 cash was found in the Delberts' home. (Tr. 10-11, 18). She also stated that when John D. made the

initial application on September 3, 2008, there was no mention of the money. (Tr. 23-24).

**{¶19}** John J. testified that he reported the $9,000 to Engleman based on "rumors" that the cash had been found in the Delberts' house. (Tr. 26-27).

**{¶20}** Gerald Fiutem is the funeral director who made pre-arrangements for Phillip Delbert. Fiutem testified that John J. contacted him about the pre-arrangements. (Tr. 73). According to Fiutem, John J. stated that he had $9,000 cash to spend. (Tr. 74-75). However, John J. never turned that money over to the funeral home. (Tr. 75).

**{¶21}** Louis Woodruff is Alberta's son and Phillip's stepson. Woodruff testified that in mid-August 2008, he had a conversation with Stephanie where she told him that approximately $9,000 cash was found in the Delberts' home. (Tr. 93-94). He later stated that he thought the exact amount was $8,800. (Tr. 109).

**{¶22}** John D. testified that he first learned of the $9,000 from Stephanie and John J. (Tr. 136). He also stated that he had heard the figure was $8,800 but assumed it had been rounded up because it was an "easier figure". (Tr. 142). John D. admitted that, although he signed a Medicaid fraud warning concerning his parents' application, he did not disclose the $9,000 to Medicaid. (Tr. 153).

**{¶23}** This testimony constitutes competent, credible evidence that approximately $9,000 cash was found in the Delberts' home. No evidence contradicted Margie's testimony and photographs that she found approximately $9,000 cash. Both Woodruff and John D. testified that they first learned of the money from Stephanie. John J. believed in the existence of the money so much so that he reported it to Engleman. And while there was some testimony that the Delberts received food stamps and had few resources, this testimony does little to take away from the testimony that $9,000 was found and discussed amongst most members of the extended family.

**{¶24}** Secondly, Stephanie argues that even if competent, credible evidence established that there was cash found that belonged to the estate, there was no

evidence as to a specific amount. She contends that the estate has alleged at various times that she stole $3,000, $9,000, $9,800, $30,000, and $50,000 from it. Stephanie further asserts that Margie presented varying stories as to how and where the cash was found in the Delberts' house. Stephanie next asserts that the two witnesses who the trial court relied on in arriving at the $9,000 figure gave conflicting testimony. She points out that Louis Woodruff testified that Stephanie had $8,800 in her possession while John D. testified that she had $9,000 in her possession.

{¶25} At some point John J. left a telephone message for Margie where he stated, "We know about the $9,000" and "It will be handed over to the funeral home." (Tr. 31-32; Ex. C). John J. tried to explain that he was referring, however, to a plan he had with John D. regarding money in the Delberts' bank accounts. (Tr. 32).

{¶26} Melissa Singhaus is Margie's daughter. She testified that while at the Delberts' house in September 2008, she found an estimated $3,000 in an envelope in the cupboard. (Tr. 39, 66). Melissa stated that Stephanie was there too and Stephanie took the money. (Tr. 39-40). However, Melissa had no knowledge of the alleged $9,000. (Tr. 52).

{¶27} Woodruff testified that Stephanie told him that she and Margie "had words" about the $9,000 the night it was found. (Tr. 94). He stated that Stephanie told him that she was concerned about the safekeeping of the money and that she left the Delberts' house early the next morning with the money to put it in her safe. (Tr. 94). Woodruff testified that he had numerous subsequent conversations with Stephanie about the money where she indicated that she was going to bring it to the funeral home or the nursing home. (Tr. 94). During these conversations, Woodruff testified, Stephanie always indicated that the money was in her safe. (Tr. 95). But he stated that by November 2008, when he talked to Stephanie she stated that there was no money. (Tr. 94-95). Woodruff testified that he had similar conversations with John J. where John J. told him that he was going to take the money to the funeral home or the nursing home. (Tr. 96).

{¶28} John D. testified that in October 2008, he talked to Phillip about some money. He stated that Phillip told him that between $30,000 and $50,000 was in the house. (Tr. 135). John D. further testified that Stephanie and John J. initially told him that the $9,000 was in Stephanie's home safe but that later they stated that John J. took the money out. (Tr. 136). John D. stated that John J. told him that he had possession of the cash in October 2008 when he threatened to burn it. (Tr. 174). He further stated that Stephanie told Phillip, while he was in the nursing home, that she had his money in her safe. (Tr. 139).

{¶29} Margie testified that Stephanie met her at the Delberts' house the night she found the money. (Tr. 197). Stephanie's brother Mark was with her. (Tr. 197). Margie stated that she, Alberta, Stephanie, and Mark all stayed at the Delberts' house that night. (Tr. 198). She testified that she and Stephanie talked about the money. (Tr. 198). According to Margie, Stephanie badgered her about putting the money in her home safe. (Tr. 198). Margie stated that she told Stephanie they would discuss it in the morning. (Tr. 198). Margie further stated that she showed the money, which was in a plastic bag, to Mark, who stated that he did not want anything to do with it and set the bag on the floor next to the recliner he was sitting in. (Tr. 199). Margie stated that they all then went to sleep. (Tr. 199). She testified that when she woke up in the morning Stephanie and Mark were gone and so was the bag with the money. (Tr. 200).

{¶30} Mark testified that on the night in question, Margie stated that she had found some things in the house that she considered her "inheritance." (Tr. 333). He stated that they got into a heated discussion and Margie then threw a bag at him and told him to take it. (Tr. 334). Mark stated that he did not want it. (Tr. 334). He further stated that he never looked in the bag and that neither he nor Stephanie took it with them when they left the house later. (Tr. 335-36).

{¶31} The above testimony is competent, credible evidence to support the court's finding that Stephanie had possession of the $9,000 found in the Delberts' home. Margie testified that she left the bag with the money next to Mark and that

when she awoke, Stephanie and Mark were gone along with the bag of money. Further, Stephanie made comments on more than one occasion to Woodruff and John D. that she had the $9,000 in her home safe, which was where Margie testified Stephanie told her she wanted to keep the money. John D. even testified that Stephanie told Phillip that she had his money in her safe. Mark and John J. did testify that Stephanie never had the money. However, whether to believe them was a credibility determination for the trial court to make.

**{¶32}** Thirdly and finally, Stephanie argues that the evidence did not demonstrate that she concealed any assets belonging to the estate. She claims that even if the evidence showed cash existed that belonged to the estate, there was no evidence that she tried to prevent the discovery of the cash as is required to prove concealment.

**{¶33}** We previously rejected this argument in *Harrison v. Faseyitan*, 159 Ohio App.3d 325, 2004-Ohio-6808, at ¶27:

**{¶34}** "Just from the plain language of the statute [R.C. 2109.50], it is apparent that the assets or money need not have been 'concealed' in the strict sense of the word. Specifically, the statute allows examination of anyone suspected of having 'concealed, embezzled, or conveyed away or of being or having been in the possession' of estate assets. Thus, appellant's suggestion that there was no evidence of concealment (because she never hid the transactions) is clearly misguided." See also *Kish v. Kish*, 7th Dist. No. 05-MA-186 2006-Ohio-4686, at ¶20 ("[S]ince under the statute, possession of the asset can result in a guilty finding on the concealment action, appellant can be found guilty of concealment. Like the Third Appellate District, we disagree with the * * * rationale that mere possession of an estate asset cannot amount to concealment.")

**{¶35}** Thus, even if Stephanie may not have "hid" or attempted to "prevent the discovery of" the cash belonging to the estate this would not have precluded a finding that she was guilty of concealing assets belonging to the estate.

**{¶36}** Accordingly, Stephanie's sole assignment of error is without merit.

{¶37} John J. raises two assignments of error that are closely related. Therefore, we will address them together. They state, respectively.

{¶38} "THE TRIAL COURT ERRED IN PARTIALLY DENYING MR. JOHNSON'S MOTION FOR A DIRECTED VERDICT BECAUSE THERE IS INSUFFICIENT EVIDENCE TO SUPPORT A FINDING OF GUILTY OF CONCEALMENT."

{¶39} "THE TRIAL COURT'S GUILTY FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶40} John J. first argues that there was insufficient evidence as to the existence of $9,000 cash. Additionally, John J. points out that neither in his application for Medicaid nor in his will did Phillip mention any cash. And he notes that John D. swore the information he provided on Phillip's Medicaid application was correct, which did not include any mention of the alleged $9,000 cash. He further notes that John D. testified that the cash was found prior to the Medicaid fraud warning that he signed. Thus, John J. argues that John D. either lied in his testimony or committed Medicaid fraud.

{¶41} As discussed in Stephanie's assignment of error, there is enough evidence to support the trial court's finding that $9,000 cash was found in the Delberts' home. Although there were some conflicts in the evidence, these conflicts are not substantial enough to conclude that the court's finding on this point was unsupported by the evidence.

{¶42} John J. next argues that there was insufficient evidence as to his possession of any cash. For support, he points to Margie's testimony that she "assumed" John J. had the cash and that if the cash "passed hands" she was not sure. He also points to Engleman's and Woodruff's testimonies where they stated that John J. never told them that he had possession of the cash. And he points out that he told Margie in a voicemail that he did not have the cash.

{¶43} In addition to her earlier cited testimony, Engleman testified that John J. never actually told her that he had possession of the $9,000, just that the family had found it. (Tr. 18)

{¶44} John J. testified that he never stated to Margie, Fiutem, or Engleman that he had possession of the $9,000 cash. (Tr. 27-28). Instead, he stated that he was referring to the money in the Delberts' bank accounts. He further acknowledged that he left a message for Margie stating, "We know about the $9,000" and "It will be hand[ed] over to the funeral home," but he testified he was referring to $9,000 that was in the Delberts' bank accounts. (Tr. 31-32).

{¶45} Fiutem testified that John J. told him that he had $9,000 cash to spend on the funeral pre-arrangements. (Tr. 74-75).

{¶46} Woodruff stated that John J. indicated to him that he was going to take the $9,000 and turn it over to the funeral home and the nursing home. (Tr. 95-96).

{¶47} John D. testified that John J. told him that he was going to take the money out of Stephanie's safe because she was having marital problems and did not want to deal with it. (Tr. 136). John D. further testified that John J. later told him that he had the cash at his home and he even threatened to burn it. (Tr. 174-75).

{¶48} Additionally, Margie testified that she believed that either Stephanie or John J. had the money based on family hearsay, noting, "If it's passed hands, I do not know." (Tr. 234).

{¶49} This evidence supports the court's finding that John J., jointly and severally with Stephanie, had possession of the $9,000. There was enough evidence, coming from various witnesses, that John J. made statements that he had $9,000 cash belonging to the Delberts. And while he testified to the contrary, it was up to the trial court, as the trier of fact, to determine whether to believe John J. when he stated he never had the money. This is because the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co.*, 10 Ohio St.3d at 80.

{¶50} Accordingly, John J.'s first and second assignments of error are without merit.

{¶51} For the reasons stated above, the trial court's judgments are hereby affirmed.

Vukovich, P.J., concurs.

Waite, J., concurs.